UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WORKNET PINELLAS, INC., dba
CAREERSOURCE PINELLAS, a Florida
Not-For-Profit Corporation, and TAMPA BAY
WORKFORCE ALLIANCE, INC., dba
CAREERSOURCE TAMPA BAY, a
Florida Not-For-Profit Corporation,

      Plaintiffs,

v.

FEDERAL INSURANCE COMPANY,
an Indiana Stock Insurance Company, and
WESTCHESTER FIRE INSURANCE
COMPANY, a Pennsylvania Insurance
Company,

      Defendants.
_____/

Case No. _____

**Demand for Jury Trial**

# COMPLAINT
# AND DEMAND FOR JURY TRIAL
**(28 U.S.C. § 1332; Diversity of Citizenship)**

Plaintiffs WORKNET PINELLAS, INC., dba CAREERSOURCE PINELLAS ("CSPN") and TAMPA BAY WORKFORCE ALLIANCE, INC., dba CAREERSOURCE TAMPA BAY ("CSTB"), by and through the undersigned counsel, hereby sue defendants FEDERAL INSURANCE COMPANY ("Federal") and WESTCHESTER FIRE INSURANCE COMPANY ("Westchester") and allege the following:

## JURISDICTION AND VENUE

1. This is an action in diversity brought pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.

2. Venue is proper in the above-captioned court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions (alleged below) occurred within this federal judicial district.

3. This Court has personal jurisdiction over defendant Federal pursuant to section 48.193(1)(a)4., Fla. Stat., because Federal contracted to insure CSPN, which is located in Florida, and the risks insured are located in the state of Florida.

4. This Court has personal jurisdiction over defendant Westchester pursuant to section 48.193(1)(a)4., Fla. Stat., because Westchester contracted to insure CSTB, which is located in Florida, and the risks insured are located in the state of Florida.

5. This action arises from Federal's and Westchester's denial of insurance claims made by CSPN (Federal) and CSTB (Westchester) under policies of insurance issued to insure CSPN and CSTB for directors and officers ("D&O") liability under a substantially similar set of facts and circumstances.

6. All conditions precedent to bring this case have occurred or been waived.

## PARTIES

7.      Plaintiff, CSPN, is a Florida Not-for-Profit Corporation authorized to conduct business in the state of Florida and has its principal business address at 13805 58th Street, Suite 2-140, Clearwater, Florida. CSPN is a named insured under that certain D&O policy of insurance written by Federal, Policy No. 8250-1459 (the "Federal Policy").

8.      Plaintiff, CSTB, is a Florida Not-for-Profit Corporation authorized to conduct business in the state of Florida and has its principal business address at 4350 West Cypress Street, Suite 875, Tampa, Florida. CSTB is a named insured under that certain D&O policy of insurance written by Westchester, Policy No. G24333802 006 (the "Westchester Policy").

9.      At all times material hereto, Defendant Federal was a stock insurance corporation organized and existing under the laws of the state of Indiana with its principal place of business located at 251 North Illinois, Suite 1100, Indianapolis, Indiana.  Federal conducted business in the state of Florida by, *inter alia*, insuring CSPN under the Federal Policy.  A true and correct copy of the Federal Policy is attached hereto as **Exhibit A** and is incorporated herein by this reference.  The Policy period is July 1, 2017, to July 1, 2018.

10.     At all times material hereto, Defendant Westchester was an insurance corporation organized and existing under the laws of the state of Pennsylvania with

its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania. Westchester conducted business in the state of Florida by, *inter alia*, insuring CSTB under the Westchester Policy. A true and correct copy of the Westchester Policy is attached hereto as **Exhibit B** and is incorporated herein by this reference. The Policy period is January 1, 2018, to January 1, 2019.

## BACKGROUND

11.     CSPN is named as an insured party under the Federal Policy. CSPN procured the Federal Policy from Federal to afford entity and D&O coverage for certain risks associated with its business, which primarily involves providing workforce education and training and job placement services for residents of Pinellas County. CSPN's primary activities include providing (in partnership with the Pinellas County Board of County Commissioners) policy guidance and oversight for workforce development activities for Pinellas County, including activities under the federal Workforce Innovation and Opportunity Act ("WIOA"); developing an annual budget subject to the approval of the Pinellas Board of County Commissioners ("Pinellas Board"); developing, ratifying, and submitting or amending the local workforce plan subject to the approval of the Pinellas Board; establishing and adopting policy for governance, administration, and operation of the CSPN Board of Directors; overseeing the CSPN budget, programs, administrative costs, and performance outcomes; and identifying and selecting

providers of training services, intensive services, youth providers, and One Stop Operators as necessary and applicable.

12. CSTB is named as an insured party under the Westchester Policy. CSTB procured the Westchester Policy from Westchester to afford entity and D&O coverage for certain risks associated with its business, which primarily involves providing workforce education and training and job placement services for residents of Hillsborough County. CSTB's primary activities include providing (in partnership with the Hillsborough County Board of County Commissioners) policy guidance and oversight for workforce development activities for Hillsborough County, including activities under WIOA; developing an annual budget subject to the approval of the Hillsborough Board of County Commissioners ("Hillsborough Board"); developing, ratifying, and submitting or amending the local workforce plan subject to the approval of the Hillsborough Board; establishing and adopting policy for governance, administration, and operation of the CSTB Board of Directors; overseeing the CSTB budget, programs, administrative costs, and performance outcomes; and identifying and selecting providers of training services, intensive services, youth providers, and One Stop Operators as necessary and applicable.

13. CSPN and CSTB primarily pay for their operations, programs, and services through federal grant funds made available to the states through the U.S. Department of Labor ("DOL") under the WIOA statutes and regulations, which

programs are administered by the State of Florida Department of Economic Opportunity ("DEO") and CareerSource Florida, Inc.

14. The operations, programs, and services of CSPN and CSTB are subject to periodic audits and compliance review by, among others, DOL to ensure CSPN and CSTB are each operating in a manner compliant with the federal program and applicable law.

## FACTS UNDERLYING CLAIMS FOR INSURANCE COVERAGE BY CSPN AND CSTB

15. In or around March 2018, based on media reports that the President and Chief Executive Officer of CSPN and CSTB, Ed Peachey, had falsified job placement records, the DOL Employment and Training Administration ("ETA") commenced a comprehensive compliance review of CSPN's and CSTB's operations.

16. Upon learning of the allegations against Mr. Peachey, CSPN sent notice of the allegations to Federal through its insurance agent. Likewise, upon learning of the allegations against Mr. Peachey, CSTB sent notice of the allegations to Westchester through its insurance agent.

17. Federal, through its claims administrator, Chubb North American Financial Lines Claims ("Chubb"), acknowledged receipt of the notice of the CSPN claim.

18. Westchester, through its claims administrator, also Chubb, acknowledged receipt of the notice of the CSTB claim.

19. While CSPN and CSTB were each attempting to procure insurance coverage for the DOL investigation and events subsequently occurring in relation thereto, the DOL ETA, in collaboration with DEO, conducted its compliance review in 2018 and 2019. The initial compliance review led DOL to conclude that Mr. Peachey falsified job placement and certain other records, and committed other violations of WIOA and the Workforce Investment Act ("WIA"). DOL initially questioned more than $17 million in costs already paid by CSPN and CSTB.

20. In a report detailing its initial findings dated May 15, 2019, sent to DEO, DOL concluded that "[t]he improper administration of Federal employment and training funds by the two local workforce boards lead to blatant non-compliance with WIOA requirements." DOL also concluded that the non-compliance by CSPN and CSTB was "compounded by the lack of fiduciary oversight which fostered an environment vulnerable to mismanagement, waste, fraud, and abuse to occur undetected." DOL reported seventeen findings of non-compliance and three areas of concern. DOL ordered DEO to submit a corrective action plan responding to each of the findings and questioned costs. CSPN and CSTB promptly provided the initial findings to Federal and Westchester through Chubb.

21. Chubb provided CSPN and CSTB with its initial determinations regarding coverage under the Federal Policy and Westchester Policy. Specifically, Chubb determined that the DOL investigation did not amount to a defined "Claim" under either the Federal Policy or the Westchester Policy and, on that basis, refused to afford CSPN and CSTB coverage.

22. From October 2019 through March 2022, DOL and DEO worked with outside accounting professionals to create and apply agreed-upon methodologies to audit the questioned costs during the five-year period of July 1, 2013, to June 30, 2018.

23. DOL and DEO agreed that it was pragmatically impossible to audit all transactions for the entire five-year period. Accordingly, they agreed to audit all of the transactions for a single year and to use that year's result to estimate the amount of costs that did not comply with WIOA requirements for all five years. Both CSPN and CSTB had already paid out all of those questioned costs.

24. On March 11, 2022, DOL issued its Final Determination ("Final Determination"). The Final Determination concluded that $13.4 million of the $17.7 million in questioned costs were allowed, leaving an aggregate of $4.3 million that were disallowed for being out of compliance with WIOA requirements.

25. Of that $4.3 million, DOL allocated $1.86 million to CSPN and $2.49 million to CSTB.

26.   DOL's Final Determination characterized the disallowed costs as federal debts, indicated that interest would accrue on the debts, and that the debts would become delinquent if not paid within thirty days.

27.   The Final Determination was sent to the executive director of DEO. DEO forwarded the letter to the executive directors and staff of CSPN and CSTB as well as to the respective chairs and staff of the Hillsborough and Pinellas Boards of County Commissioners.

28.   On March 28, 2022, DEO directed CSPN and CSTB to pay the claim under DOL's Final Determination and indicated that payment had to be made from non-federal funds.

29.   After receiving DOL's Final Determination, Chubb (on behalf of Federal and Westchester), issued separate supplemental coverage decisions. Chubb concluded that because *DOL* did not direct the Final Determination to CSPN or CSTB with a demand for payment from CSPN and CSTB, the Final Determination had not matured into a defined claim under the Policy. Chubb also concluded that three coverage exclusions applied: (a) the professional services exclusion; (b) the fraud/criminal acts exclusion; and (c) an exception to the definition of "Loss" providing no coverage for any amount not insurable under Florida law.

30. CSPN had non-federal funds available to it to pay the sums demanded by DOL. CSTB did not have a similar ability to satisfy the debt with non-federal funds.

31. Due to the unequivocal refusal and failure of Federal (through Chubb) to pay the damages owed by CSPN to DOL pursuant to the Final Determination, and due to its desire to avoid interest accruing, CSPN paid DOL in full to resolve the claim against it. Before approving the payment, CSPN's Board of Directors in a public meeting sought assurance from Chubb–through its agent–and were assured that paying the claim would not undermine its insurance coverage. CSPN relied to its detriment on that assurance.

32. Similarly, due to the unequivocal refusal and failure of Westchester (through Chubb) to pay the damages owed by CSTB, and due to the desire of Hillsborough County to avoid interest accruing (all being amounts that would ultimately inure to the detriment of Hillsborough County), Hillsborough County paid DOL CSTB's share of the disallowed costs.[1]

33. As of the date hereof, Federal and Westchester (through Chubb) have continued to fail and refuse to honor their respective obligations to CSPN and CSTB

---

[1] In so doing, Hillsborough County became an equitable subrogee of CSTB's claim for insurance benefits from Westchester. Upon information and belief, Hillsborough County will be filing a claim against Westchester asserting its rights as equitable subrogee.

under the Federal Policy and the Westchester Policy. In so doing, Federal and Westchester have each breached their respective insurance policies with CSPN and CSTB.

34. CSPN and CSTB have satisfied all other conditions in the Federal Policy and Westchester Policy, respectively.

35. As a result of the failure and refusal of Federal and Westchester to honor their contractual obligations to CSPN and CSTB, respectively, CSPN and CSTB were forced to retain undersigned counsel to prosecute this action, and they are each obligated to pay the undersigned a reasonable fee for their services.

## COUNT I – BREACH OF CONTRACT
*(by CSPN against Federal)*

36. CSPN re-alleges all common allegations, paragraphs 1 through 35 above, as if fully set forth herein.

37. This is an action for breach of the Federal Policy seeking damages in the sum of $1,000,000 (exclusive of attorney's fees, costs, and prejudgment interest).

38. Federal issued the Policy to CSPN.

39. The Final Determination is a covered Claim and Loss under the Federal Policy.

40. No exclusions to coverage afford Federal a basis to deny coverage to CSPN.

41. By failing and refusing, and continuing to fail and refuse, to pay the damages owed by CSPN to DOL, Federal breached the Federal Policy.

42. As a proximate result of Federal's breach of the Policy, CSPN has been damaged in an amount exceeding the Federal Policy limits, exclusive of costs, prejudgment interest, and attorney's fees. Federal thus owes CSPN its Policy limits under the Policy totaling $1,000,000 (exclusive of attorney's fees, costs, and prejudgment interest).

WHEREFORE, CSPN prays that the Court assume jurisdiction over this case and enter a judgment of damages against Federal, an award of costs, an award of attorney's fees pursuant to section 627.428(1), Fla. Stat., prejudgment interest, and award such other and further relief as the Court may deem just and proper.

## COUNT II – BREACH OF CONTRACT
*(by CSTB against Westchester)*

43. CSTB incorporates by reference the allegations in Paragraphs 1 through 35, above, as if fully set forth herein.

44. This is an action for breach of the Westchester Policy seeking damages in excess of $2,400,000 (exclusive of attorney's fees, costs, and prejudgment interest).

45. Westchester issued the Westchester Policy to CSTB.

46. The Final Determination is a covered Claim and Loss under the Westchester Policy.

47. No exclusions to coverage afford Westchester a basis to deny coverage to CSTB.

48. By failing and refusing, and continuing to fail and refuse, to pay the damages owed to DOL, Westchester breached the Policy.

49. As a proximate result of Westchester's breach of the Westchester Policy, CSTB has been damaged in an amount exceeding $2,400,000[2], exclusive of costs, prejudgment interest, and attorney's fees.

WHEREFORE, CSTB prays that the Court assume jurisdiction over this case and enter a judgment of damages against Westchester, an award of costs, an award of attorney's fees pursuant to section 627.428(1), Fla. Stat., prejudgment interest, and award such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable in the State of Florida.

DATED this 17th day of March, 2023

        **MESSER CAPARELLO, P.A.**

        /s/Robert A. McNeely
        **ROBERT A. McNEELY, ESQ.**
        **Lead Attorney**
        Florida Bar Number: 42994
        Primary E-Mail: rmcneely@lawfla.com
        Secondary E-Mail: clowell@lawfla.com

---

[2] The Westchester Policy has liability limits of $3 million.

**JAMES J. DEAN, ESQ.**
Florida Bar Number: 832121
Primary E-Mail: jdean@lawfla.com
Secondary E-Mail: tweiss@lawfla.com
**DOUGLAS M. SMITH, ESQ.**
Florida Bar Number: 12809
Primary E-Mail: dsmith@lawfla.com
Secondary E-Mail: mfoley@lawfla.com
statecourtpleadings@lawfla.com
P.O. Box 15579 (32317)
2618 Centennial Place
Tallahassee, FL 32308
Telephone: (850) 222-0720
Fax: (850) 224-4359

*Counsel for Plaintiffs*